## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS

MADISON COUNTY, ILLINOIS,          )
                                   )
    Plaintiff,                     )    Cause No.: 3:21-cv-254
                                   )
vs.                                )
                                   )
MCKINSEY & COMPANY, INC. and       )    Removed from the Circuit Court
NAHEED T. BASHIR, M.D.,            )    of the Third Judicial Circuit,
                                   )    Madison County, Illinois
    Defendants.                    )    Cause No. 2021 L 000139
                                   )

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND

COMES now the Plaintiff, Madison County, Illinois, by and through its undersigned attorneys, and for its Memorandum in Support of Motion to Remand, pursuant to 28 U.S. Code § 1447, states as follows:

## ARGUMENT

I. **BOTH THE PLAINTIFF AND DEFENDANT NAHEED T. BASHIR, M.D. ARE CITIZENS OF ILLINOIS SUCH THAT THERE IS NO DIVERSITY OF CITIZENSHIP, AND NO FEDERAL SUBJECT MATTER JURISDICTION FOR THIS CLAIM.**

Federal law requires that a case be remanded from federal to state court if at any time prior to final judgment it appears that the federal court lacks subject matter jurisdiction: "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C.A. § 1447(c)(West).   A defendant only has the right to remove a case from state to federal court when the federal court could exercise jurisdiction in the first instance. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510 (7th Cir. 2006).  An out-of-state defendant who wants to remove must bear a heavy burden to establish fraudulent joinder. The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant. *Poulos v. Naas Foods,*

*Inc.*, 959 F.2d 69, 73 (7th Cir. 1992).  "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court."  *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

In this matter, the Plaintiff properly brought its state law claims against Mckinsey & Company, Inc ("McKinsey") and Naheed T. Bashir, M.D. ("Bashir") in the Circuit Court of Madison County, Illinois.  Plaintiff is an Illinois county.  The removing defendant McKinsey and the Plaintiff agree that Madison County is considered a citizen of Illinois for purposes of diversity. *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 702 F.2d 107, 109 (7th Cir 1983) (quoting Moor v. County of Alameda, 411 U.S 693, 717, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973)).  However, with regard to the Illinois defendant in the case, Dr. Bashir, McKinsey asserts that this Illinois resident is domiciled in Missouri.  McKinsey cites to no law for its novel, unsupported theory that an Illinois resident can be domiciled in Missouri based on her employment.  Plaintiffs legal research likewise discloses no viable theory by which a longtime Illinois resident may be considered to be domiciled in Missouri based on employment or professional licensure alone.  She is licensed and has an office in Illinois as well.  It was the discipline, probation, applied to her Illinois license in 2020 that alerted the Plaintiff to her practices.  Many individuals domiciled in one state, particularly near a border, choose to work in a neighboring state but that does not convert them to a citizen of that neighboring state.  Defendant Dr. Bashir lives at 211 Clairmont Dr. in Belleville, Illinois and was served at her residence.  Ex. 1, Affidavit of Process Servicer.

As such, the Plaintiff and Defendant Dr. Bashir are both citizens of Illinois for purposes of jurisdictional analysis such that diversity of citizenship, as required by 28 U.S.C.A. § 1332, does

not exist.  Absent diversity of citizenship, no federal subject matter jurisdiction exists, and this matter must be remanded to state court.

## II.    THE DEFENDANTS ARE PROPERLY JOINED.

The Code of Civil Procedure provides that any person may be made a defendant who is alleged to have a claim or interest in the controversy or transaction out of which the controversy arose, or whom it is necessary to join for the complete determination of any question involved in the case, or against whom liability is asserted arising out of the same transaction. *Cook ex rel. Cook. v. AAA Life Ins. Co.*, 2014 IL App (1st) 123700, ¶ 35, 13 N.E.3d 20, 34 (*citing*, 735 ILCS 5/2–405(a)).  Joinder rules in federal court are even broader:  defendants may be joined where "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20.  A defendant is properly joined even if it is not part of the same transaction or occurrence so long is it is part of the same "series of transactions or occurrences."

In this case, the claims against McKinsey and Bashir arise out of the very same transaction, or, at the very least, the same series of transactions.  They are joint tortfeasors jointly liable for the relief sought, and there are common questions of law and fact among the claims.  McKinsey is generally alleged to have been responsible for the design and implement a sales strategy for OxyContin that would triple the sales of the prescription medication OxyContin while Dr. Bashir is alleged to have been one of the physicians influenced by the sales strategy who was a necessary link in the chain, prescribing medications that would eventually be responsible for the opioid crisis in the county.  Dr. Bashir was fined and placed on probation for inappropriately prescribing

controlled substances.  Each defendant was a necessary component to the opioid sales that have harmed the Plaintiff.

Both are alleged to be joint tortfeasors having contributed to the same opioid sales, public nuisance, and injury.  McKinsey claims that the conduct alleged against the two defendants is different, but that is not the test.  The relationship of defendants in this case is like an intersectional car accident where defendant one is alleged to have motioned to defendant two that it was safe to enter a dangerous intersection, and defendant two is alleged to have followed that advice and proceeded into the dangerous intersection.  The defendants in this case are different links in the same chain of events that resulted in opioid medication pouring into the county.  As such, they are joint tortfeasors, the claims share factual issues as to the propriety of prescriptions, the claims share issues as to the propriety of damages, and multiple causes of action asserted in the suit are lodged against both parties so that legal issues are shared as well.   Both parties are alleged to have contributed to the same public nuisance as necessary parts of the same distribution scheme.  Under either Illinois or federal law, there is no legitimate issue as to whether these joint tortfeasors are properly joined as defendants in this case.

The only issue presented by joinder of these defendants is that Dr. Bashir is not diverse, and McKinsey wants the Court to ignore that so that it may shop the case to a preferred forum.

  **a.  The Court should not sever a properly joined non-diverse defendant to create subject matter jurisdiction where there was none upon removal.**

For the second time, McKinsey presents a novel theory that if any party to a state court case is not diverse, they can simply be severed by the Court to create diversity jurisdiction.  The law does not recognize such gamesmanship and it would be an upheaval of longstanding procedure to do so.

In an attempt to suggest that this is a viable procedure in the Seventh Circuit, McKinsey erroneously cites Todd *by Todd v. Merrell Dow Pharmaceuticals, Inc.*, 942 F.2d 1173, 1178 (7th Cir. 1991), *amended* (Oct. 18, 1991) for the proposition that a physician is not an indispensable party to an action against a products liability defendant such that a physician may be severed. Based on *Todd*, McKinsey argues that Dr. Bashir should be severed so that McKinsey's choice of forum in federal court can be substituted for the Plaintiff's. However, *Todd* did not involve severing a party. To the contrary, the question in *Todd* was whether plaintiff should be allowed to join the physician defendant, avoid the pending adverse judgment in federal court and retreat to state court. *Id. Todd*, itself, indicates that in a case like the one at bar where a non-diverse physician defendant is properly joined in state court, remand is the proper course:

> Characterizing her argument as "jurisdictional," Todd now maintains that it can never be waived. But the opportunity to join Dr. Boothe that is accorded Todd under state law is not a "jurisdictional" right that cannot be surrendered. ***The district court presumably should have remanded this suit to state court for lack of diversity jurisdiction if Todd had exercised her state law option to join Dr. Boothe, a non-diverse party.***

942 F.2d at 1178 (emphasis added). Rather than supporting McKinsey's claims that Dr. Bashir is merely a dispensable party that can be severed to serve McKinsey's end, in the *Todd* case, the Seventh Circuit stated that if a physician defendant is joined in state court, a district court should remand for lack of diversity jurisdiction—precisely the relief that Plaintiff requests in this motion.

### b. Dr. Bashir is not fraudulently joined as the claims alleged in the Complaint are viable.

To establish fraudulent joinder, a removing defendant must show that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant. *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013). Put differently, the defendant has the "heavy burden" of showing that the plaintiff's claim has "no chance of success"

against the non-diverse defendant. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). The Court's role in evaluating allegations of fraudulent joinder is "to determine whether Plaintiff's complaint provides a reasonable basis for predicting that the plaintiff might be able to recover against an in-state defendant ... not to ascertain the merits of [the] claim." *Feeley v. Bayer Corp.*, 18-CV-2090-NJR-GCS, 2019 WL 4261545, at *3 (S.D. Ill. Sept. 9, 2019), quoting, *Asperger v. Shop Vac Corp.*, 524 F. Supp. 2d 1088, 1096 (S.D. Ill. 2007).

In this case, McKinsey's fraudulent joinder claim fails because it fails to accurately state the facts alleged against defendants in the Complaint and because it fails to account for Illinois law providing a discovery rule for claims that cannot be ascertained.

As to the facts asserted in the Complaint, McKinsey posits a five-year statute of limitations for each of the claims asserted against Dr. Bashir in its Notice of Removal.  (Doc. 1, ¶ 47(a)-(d)). Then, McKinsey cherry picks a date from the Complaint more than five years prior to filing to claim that the filing is out of time.  In order to concoct a fraudulent joinder argument, McKinsey recognizes its bad conduct from the years 2008 to 2014 alone and pretends that the Complaint alleges nothing later about McKinsey and Dr. Bashir.  (Doc. 1, ¶ 48)(citing the Complaint at ¶¶ 170, 208 and 209.  This is an incomplete and inaccurate characterization of the Complaint.  In the same paragraphs incompletely referenced by McKinsey, the Complaint alleges conduct by McKinsey and Bashir in 2018 and 2019:

- "Madison County prescription rates with regard to opioid medication are categorized as extremely high and far aabove the national average for the period beginning in 2010 ***and running through 2019;***" (Complaint, ¶ 208 (a))

- "Madison County set a record-breaking 109 drug-related deaths ***in 2018***, according to the annual coroner's report." (Complaint, ¶ 208 (c)).\

Elsewhere, the Complaint expressly alleges that McKinsey's efforts to increase sales persisted after 2017:

> On October 23, 2017, the president of the United States declared the ongoing nationwide opioid epidemic a "public health emergency." Even at this late hour in the crisis, McKinsey continued to propose solutions to the Sacklers and Purdue to further boost opioid sales. These solutions were fashioned, in perfect McKinsey parlance, as "high impact interventions to rapidly address market access challenges."

(Complaint, ¶ 175).  With regard to Dr. Bashir, the Complaint is clear that the administrative finding related to her was handed down in 2020, where her physician and surgeon license was placed on indefinite probation for a minimum of two years and she was fined $5,000 due to inappropriately prescribing controlled substances.  (Complaint, ¶¶ 194-196).  This information was published in the Illinois Department of Financial and Professional Regulation published Disciplinary Reports for 2020.  (Complaint, fn. 62).

In determining the issue of fraudulent joinder, the Court must give the benefit of factual and legal inferences to the plaintiff.  *Veugeler v. Gen. Motors Corp.*, 96 C 7278, 1997 WL 160749, at *2 (N.D. Ill. Apr. 2, 1997).  In this case the Complaint expressly references conduct and injury in 2017, 2018 and 2019 leading up to sanctions handed down in 2020.  There are situations where the tortious conduct is continuing, and the limitations period begins on the date of the last injury (the date the tortious acts cease).  *Powell v. City of Danville*, 253 Ill. App. 3d 667, 669, 625 N.E.2d 830, 831 (1993).  The clear inference is that Dr. Bashir's conduct and that of McKinsey continued after 2016 so that, on the facts of the Complaint, there is no issue as to the running of a five-year statute of limitations.

Further, Illinois employs a discovery rule to determine when actions accrue.  It is settled, for example, that the discovery rule applies in determining when plaintiff's nuisance causes of action accrued.  *Powell v. City of Danville*, 253 Ill. App. 3d 667, 668, 625 N.E.2d 830, 830 (1993).

It is settled that the "discovery rule applies to actions brought under the Consumer Fraud Act." *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1021, 876 N.E.2d 218, 231 (2007).  Illinois courts have explained the discovery rule, along with the requirement of diligent inquiry, as follows:

> The statute starts to run when a person knows *or reasonably should know* of his injury and also knows or reasonably should know that it was wrongfully caused. *At that point* the burden is upon the injured person to inquire further as to the existence of a cause of action.

*Id.*  With Dr. Bashir's sanction not published until 2020, the Plaintiff had no way to know that the defendant was inappropriately prescribing controlled substances.  Under the discovery rule, the time to allotted to sue Dr. Bashir has only just begun.

Taking all inferences of fact and law in favor of the Plaintiff, as the Court must, it cannot be said that the Plaintiff cannot establish a cause of action against the in-state defendant, Dr. Bashir, and thus, McKinsey's fraudulent joinder claim fails.  As a result, the case must be remanded to Illinois state court.

### c. Fraudulent misjoinder has not been recognized by the Seventh Circuit and the Southern District has uniformly refused to apply this controversial theory.

The Seventh Circuit has not addressed the validity of the doctrine of fraudulent misjoinder declared in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996) nearly 25 years ago.  In the *Tapscott* decision, the Court essentially created a new basis for federal subject matter jurisdiction.  Neither the United States Supreme Court nor the Seventh Circuit have yet passed on whether such an expansion of jurisdiction is appropriate.  As a consequence, the Southern District of Illinois has uniformly refused to apply the doctrine of fraudulent misjoinder until it receives some guidance from a controlling court:

> courts in this district have consistently refused to follow the doctrine outlined in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), due to the lack of clarity and ease of application, among other reasons. *Baker v. Johnson & Johnson*, 709 F. Supp. 2d 677, 686 (S.D. Ill. 2010) ("courts have struggled with virtually every aspect of the meaning and scope of the doctrine"). The Court declines to recognize such doctrine, until such time as the doctrine is addressed by the Supreme Court of the United States or the Seventh Circuit Court of Appeals.

*Feeley v. Bayer Corp.*, 18-CV-2090-NJR-GCS, 2019 WL 4261545, at *4 (S.D. Ill. Sept. 9, 2019),

*See also*, *Robinson v. Ortho-McNeil Pharm., Inc.*, 533 F. Supp. 2d 838, 842 (S.D. Ill. 2008);

*Roland v. Janssen Research & Dev., LLC*, 3:17-CV-00582-DRH, 2017 WL 3033786, at *3 (S.D.

Ill. July 18, 2017);  *Douthit v. Janssen Research & Dev., LLC*, 3:17-CV-00439-DRH, 2017 WL

2492661, at *3 (S.D. Ill. June 9, 2017); *Woodall v. Janssen Research & Dev., LLC*, 17-0441-DRH,

2017 WL 2495410, at *3 (S.D. Ill. June 9, 2017); *Reeves v. Pfizer, Inc.*, 880 F. Supp. 2d 926, 927

(S.D. Ill. 2012); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab.

Litig.*, 779 F. Supp. 2d 846, 857 (S.D. Ill. 2011); *Baker v. Johnson & Johnson*, 709 F. Supp. 2d

677, 686 (S.D. Ill. 2010); *Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d 842, 851 (S.D. Ill.

2006).

In *Rutherford*, Judge Murphy explained the difficulties with the doctrine thusly:

> This Court gives respectful consideration to decisions of courts of appeals in sister circuits, *see Colby v. J.C. Penney Co.,* 811 F.2d 1119, 1123 (7th Cir.1987), but the Court declines to follow *Tapscott.* In the Court's view, whether viable state-law claims have been misjoined—even "egregiously" misjoined—is a matter to be resolved by a state court. Nothing in the jurisprudence of the Supreme Court of the United States regarding fraudulent joinder suggests that the joinder of non-fraudulent claims is a question that implicates the subject matter jurisdiction of a federal court.

*Rutherford*, 428 F. Supp. 2d at, 851.  Further, Judge Murphy pointed out that federal courts have

traditionally held that matters of state procedure, including joinder of parties and claims, have no

bearing on the existence or nonexistence of federal subject matter jurisdiction, thus, Judge

Murphy's view was that "fraudulent misjoinder" is an improper expansion of the scope of federal diversity jurisdiction. *Id.* "As the Court noted in *Rutherford,* the jurisprudence of the Supreme Court of the United States has never even hinted at the recognition of misjoinder of legally viable, non-fraudulent claims under state law as a species of fraudulent joinder; in fact, the longstanding principle in the federal courts has been that questions of joinder, particularly under state rules of civil procedure, do not implicate federal subject matter jurisdiction." *Robinson v. Ortho-McNeil Pharm., Inc.*, 533 F. Supp. 2d 838, 842 (S.D. Ill. 2008). While jurisdictional rules ought to be simple and precise so that judges and lawyers are spared having to litigate over not the merits of a legal dispute but where and when those merits shall be litigated. *Rutherford*, 428 F. Supp. 2d at 852*, quoting, In re Lopez,* 116 F.3d 1191, 1194 (7th Cir.1997). However, the doctrine of fraudulent joinder escapes easy application as it relies on a subjective standard of "egregiousness" that is not capable of being reduced to a simple and precise formula. "[U]nder *Tapscott,* something more than 'mere misjoinder' of parties may be required to find fraudulent misjoinder. Precisely what the 'something more' is was not clearly established in *Tapscott* and has not been established since." *In re Bridgestone/Firestone, Inc.*, 260 F. Supp. 2d 722, 728 (S.D. Ind. 2003).

Further, as set forth above, the joinder of the claims against the defendants in this case are clearly proper and not egregiously misjoined in that they are the same transaction or series of transaction—two links in the same chain that led to a tragic excess of opioid medication being distributed in the county. The Court should refuse to recognize and apply the troubled doctrine of fraudulent misjoinder and remand this case between non-diverse parties to state court from whence it came.

### III.   "RELATED-TO" JURISDICTION UNDER 28 USC § 1334(b) IS NOT A BASIS FOR REMOVAL.

McKinsey's third ground for removal is that the County's claims are "related to" Purdue Pharma's bankruptcy proceeding. Notably, however McKinsey does not seek to transfer this proceeding to bankruptcy court overseeing that bankruptcy. Instead, it seeks to consolidate the actions against it in a *separate* multi-district litigation to be established in the Southern District of New York. *See* Motion to Transfer, Doc. 1 filed March 5, 2021, *In re McKinsey & Company, Inc., National Prescription Opiate Consultant Litigation*, MDL No. 2996 (J.P.M.L. 2021) In essence, the McKinsey cites federal bankruptcy jurisdiction in an effort to avoid state court proceedings, not because this case is appropriately consolidated with Purdue's ongoing administration and reorganization. It is not. For the following reasons, the exercise of federal jurisdiction over this case because Purdue is already in bankruptcy is improper, and the Court should remand this action to state court for further proceedings.

### a.   There is no jurisdiction under 28 USC § 1452(a) because Plaintiff is a governmental unit enforcing its police or regulatory power.

Section 1452 governs the removal of certain state actions related to ongoing bankruptcy proceedings. McKinsey's argues the County's claims are removable under Section 1452(a) because they are "related to" Purdue's bankruptcy proceeding. That statute provides:

> A party may remove any claim or cause of action in a civil action **other than** a proceeding before the United States Tax Court or **a civil action by a governmental unit to enforce such governmental unit's police or regulatory power**, to the district court for the district where such civil action is pending, is such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

(emphasis added.)

### i.      Madison County is a "governmental unit."

The United States Bankruptcy Code defines a "governmental unit" to mean "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government. 11 USCA § 101(27).

By its terms, then, the very statute McKinsey cites in favor of federal jurisdiction *carves out and excludes* from federal jurisdiction the instant action. Plaintiff Madison County is a local government (or, in the terms of the statute, an "other foreign or domestic government") and the instant lawsuit seeks to enforce the County's police or regulatory power.

### ii.      This action is an exercise of the County's police or regulatory power.

In order to determine whether an action constitutes an exercise of a governmental unit's police or regulatory power, courts employ two "tests," the pecuniary interest test and the public policy test. *In re RGV Smiles by Rocky L. Salinas D.D.S. P.A.*, 2021 WL 112182, at *4 (Bankr. S.D. TX January 6, 2021); *see also In re Halo Wireless*, 684 F.3d 581, 588 (5th Cir. 2012); *SEC v. Brennan*, 230 F.3d 65, 71 (2nd Cir 2000) ("[T]he purpose of this exception is to prevent a debtor from 'frustrating necessary government functions by seeking refuge in bankruptcy court."). "If a court finds that the governmental unit's actions are aimed at protecting a pecuniary governmental interest or adjudicating private rights, as opposed to protecting public safety and health or effectuating public policy," then bankruptcy jurisdiction may obtain. *In re RGV Smiles*, 2021 WL 112183 at *4. Here, where the County's actions seek to protect public safety and health and/or effectuate public policy, remand is required because federal jurisdiction is lacking. *Id*.

### 1. The Pecuniary Interest Test

"Where a governmental unit acts primarily to further its financial interests, and not primarily to protect public health and safety, that action satisfies the pecuniary interest test and the automatic stay applies." *Id*. at 4. Typical examples of acting in the governmental unit's pecuniary interest are action to collect taxes, or actions stemming from "a debt arising from normal commercial transactions to purchase goods or services." *Id*.

The primary driver of the instant action is the County's focus on public safety and health. *See Id*. at *5 ("Often a governmental unit's enforcement of its police or regulatory powers have a pecuniary element to it. What matters, however, is whether the pecuniary interest is the primary driver behind the unit's action or whether the focus is on public safety and health."). The County is neither seeking to collect a tax, nor acting on its own behalf with respect to commercial transactions to which the County was a party. Rather, the County's complaint makes abundantly clear that it brings this action for public health and safety reasons related to the devastating effect that the opioid crisis has had on its population.

### 2. The Public Policy Test

Similar to the Pecuniary Interest test, the Public Policy test inquires as to "whether the government is effectuating public policy rather than adjudicating private rights." *Id.* at *6. Like the Pecuniary Interest test, the Public Policy test is evaluated on the basis of the totality of circumstances. *In re Halo Wireless, Inc.*, 684 F.3d at 588.

Here, the County seeks to effectuate public policy related to the health and welfare of its citizenry, where the opioid crisis has run rampant. Accordingly, the instant action is typical exercise of a governmental unit's police or regulatory power, and is therefore exempt from removal under the plain language of Section 1452(a).

### b.   The instant action is not "related to" the Purdue bankruptcy.

As stated throughout the complaint, the County is seeking redress from McKinsey relating to their culpability for the ongoing nationwide opioid crisis. As much as McKinsey may wish to emphasize the complaint's discussions of its conduct with Purdue, the fact is that the complaint alleges a far wider role for McKinsey than merely advising one company. And indeed, the complaint alleges that the work McKinsey performed for Purdue *benefitted its other opioid clients.* *See* 1st Am. Comp. ¶ 116, fn. 36 ("Purdue's marketing force was indirectly supporting sales of millions of pills marketed by rival companies;" "Especially worth noting is that this strategy also benefitted McKinsey's other opioid clients, such as Johnson & Johnson."); *Id.* at 154 ("[O]n March 14, 2002 McKinsey prepared a confidential report for Johnson & Johnson regarding how to market their opioid Duragesic."). What is more, an entire section of the County's complaint is entitled "Increasing the *Overall Size of the Opioid Market*: the Larger the Pie, the Larger the Slice." *See* 1st Am. Com. Section IV.e.ii.5 (emphasis added).

McKinsey's theory of "related-to" jurisdiction in this context would have a curious effect on bankruptcy jurisdiction jurisprudence. Indeed, in McKinsey's way of thinking, any time *any* industry participant, co-conspirator, or link in the chain involved in mass tort litigation chooses to become a bankruptcy debtor, that would effectuate jurisdiction over *all* mass tort claims against *any* industry participant alleged to have engaged in conduct roughly similar to that of the debtor. Federal bankruptcy jurisdiction is not limitless.  Rather, "common sense cautions against an open-ended interpretation of the 'related to' statutory language 'in a universe where everything is related to everything else.'" *Matter of FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996) (quoting G. Dunne, *The Bottomless Pit of Bankr. Jurisdiction*, 112 Banking L.J. 957 (Nov–Dec.1995))

McKinsey correctly identifies the test for "related-to" jurisdiction. The question is "*whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*." *Pacor*, 743 F.2d at 994 (emphasis in original); *see Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995) (citing *Pacor* and stating "[w]e have adopted the 'conceivable effect' test for determining whether a civil proceeding is related to a bankruptcy case.").

This "conceivable effect" test requires *certainty* that is lacking in the instant case. Whether an action could "conceivably" have an effect on the bankruptcy proceeding is predicated on whether the allegedly related lawsuit would affect the bankruptcy without the intervention of another lawsuit. *See In re Combustion Eng'g, Inc.,* 391 F.3d 190, 227 (3rd Cir. 2004) *as amended*; *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3rd Cir. 2002)(finding that "related to" jurisdiction arises where "the allegedly related lawsuit would affect the bankruptcy proceeding *without the intervention of yet another lawsuit.*")(emphasis added); *Johndrow v. General Motors Corp.*, 286 B.R. 133, 135 (E.D. Mo. 2002).

i.   **Contingent indemnity obligations do not support jurisdiction.**

McKinsey argues that "where a third party claim may give rise to a potential indemnification or contribution claim against the estate, the third party claim will have a conceivable effect on the estate." Notice of Removal ¶ 30 (*citing In re Sun Edison, Inc.*, 576 B.R. 453, 462-63 (Bankr. S.D.N.Y.)).

However, none of the conditions precedent that *might* entitle McKinsey to a claim for indemnification have been met. McKinsey has not asserted any indemnity or contribution claims against Purdue in the bankruptcy proceedings. Nor has McKinsey has not filed any proof of claim in the Purdue proceedings. *See General Elec. Cap. Corp. v. Pro-Fac Coop. Inc., et al.,* 2002 WL

1300054, at *2 (S.D.N.Y. June 12, 2002)(declining to exercise "related to" jurisdiction where the Debtor was not a named party and defendant's basis for "related to" jurisdiction was that that defendant had *already filed contribution and indemnity claims* in the bankruptcy proceeding.) *See also In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3rd Cir. 2002)(finding that "related to" jurisdiction arises where "the allegedly related lawsuit would affect the bankruptcy proceeding *without the intervention of yet another lawsuit.*")(emphasis added).

Though McKinsey argues that "the County's claims in this Action, if successful, could also give rise to indemnification and/or contribution claims by McKinsey against Purdue and therefore may affect property of Purdue's bankruptcy estate," that is insufficient to confer federal jurisdiction over the County's claims. The prospect that McKinsey *might* choose to initiate a separate lawsuit against Purdue in the future is precisely the sort of "prospective additional lawsuits" that a proper analysis of "related-to" jurisdiction disregards. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 227 (3rd Cir. 2004).

Moreover, there is no evidence that McKinsey has ever sought to pursue any indemnification or contribution claims against the Purdue estate despite the filing of the Chapter 11 Plan in the Purdue bankruptcy on March 15, 2021. McKinsey did not file any proof of claim in Purdue's bankruptcy. *See In re Fed.-Mogul Glob., Inc.,* 282 B.R. 301, 305 (Bankr. D. Delaware 2002)(denying bankruptcy jurisdiction where defendant had failed to pursue its indemnity rights against debtors in the past); *Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, 285 B.R. 519, 526 (Bankr. M.D. AL 2002)("[T]he filing of a proof of claim by a third-party against a debtor in order to see to enforce an indemnity agreement against the debtor merely transforms the improbable into the conceivable.")(internal citations omitted); *see also In re U.S Brass Corp.*, 173 B.R. 1000, 1004 (Bankr. E.D. TX 1994). While plaintiff does not argue or conceded that a filing

of a proof of claim – *without more* – is sufficient to confer "related to" jurisdiction, McKinsey has not fulfilled even this most basic of pre-requisites. *See In re Spaulding & Co.*, 131 B.R. 84, 89 (N.D. IL 1990)(explaining that *if* the defendant filed a proof of claim against the debtor, then "it may be necessary to revisit the [jurisdictional] issue.").

Indeed, "even if [the party seeking removal] were a creditor in the case, 'related to' jurisdiction ordinarily cannot be premised on indemnification rights against the debtor, the impact of which is potential rather than actual." *In re Imerys Talc America, Inc.*, 2019 WL at *4 (quoting *In re ALT Hotel, Inc.*, 479 B.R. 781, 807 (Bankr. N.D. Ill. 2012). "An indemnification agreement between a defendant and a non-party bankrupt debtor does not automatically supply the nexus necessary for the exercise of 'related-to' jurisdiction. *Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 750 (E.D. Pa. 2003).

### 1. McKinsey's agreement with Purdue does not give rise to "related to" jurisdiction for the County's claims.

The seminal case on "related-to" jurisdiction based on a debtor's potential indemnity liability is *Pacor, Inc. v. Higgins*, in which the Third circuit considered whether a state tort case against an asbestos supplier could be removed and consolidated with a bankruptcy proceeding initiated by the product's manufacturer based on potential indemnity obligations owed by the manufacturer. 743 F.2d at 986; *see Specialty Mills*, 51 F.3d at 774 (recognizing the eighth circuit has adopted *Pacor*'s "conceivable effect" test). Holding that removal was improper in *Pacor*, the court of appeals framed the issue as whether the suit between the non-debtors "could give rise to any **automatic liability**" for the debtor. *Pacor*, 743 F.2d at 995 (emphasis added). The court observed that even if the plaintiffs successfully recovered damages from the supplier, it "would still be obligated to bring an entirely separate proceeding to receive indemnification." *Id.* And *res*

*judicata* would not bind the debtor, permitting it to relitigate any issue relating to its duty to indemnify the supplier. *Id.*

Similarly, a non-debtor in *In re Federal-Mogul Global, Inc.* attempted to funnel thousands of tort cases into a bankruptcy court based on contractual indemnity potentially owed by the debtor. *See generally*, 300 F.3d 368 (3d Cir. 2002). The debtor manufactured products implicated by thousands of asbestos-related lawsuits. *Id.* at 372. Unlike the instant litigation, the debtor in *Federal-Mogul* was a named defendant in the tort litigation, but the plaintiffs discontinued proceeding against it in the state court actions. *Id.* at 372-73. The lower court held that it lacked subject matter jurisdiction because the plaintiffs' claims against the non-debtor defendants did not "relate to" the bankruptcy proceedings. One non-debtor defendant, Chrysler, argued its contractual right to indemnity supported the exercise of "related to" jurisdiction." *Id.* at 376. After observing that no court has "endorse[d] the proposition that *any* contract of indemnification will support an extension of related-to jurisdiction," the district court held the indemnity provisions incorporated by "boiler-plate" purchase orders could not support jurisdiction. *Id.* (original emphasis). The court of appeals refused to disturb the district court's ruling. *Id.* at 382, 384.

*Pacor* and *Federal–Mogul* require the following inquiry: (1) Is the debtor's liability **automatically triggered** when the purported related action against the party seeking indemnification begins? And (2) is a **subsequent lawsuit against the debtor a prerequisite** to finding indemnification? *Steel Workers Pension Tr. v. Citigroup, Inc.*, 295 B.R. 747, 753 (E.D. Pa. 2003). If the answer to the first question is no, or if the answer to the second is yes, then 'related to' jurisdiction does not exist. *Id.*

### 2. McKinsey's indemnity and contribution language does not support jurisdiction.

McKinsey generically avers that "Purdue has contractually agreed to indemnify McKinsey for all claims brought by third parties against Purdue or McKinsey (including reasonable legal fees) arising out of services to Purdue, " and further that "this Action, if successful, could give rise to indemnification and/or contribution claims by McKinsey against Purdue and therefore may affect property of Purdue's bankruptcy estate. Notice of Removal ¶¶ 37-38. No further detail regarding the scope, contours, or limits of these contractual provisions was provided.

McKinsey argues that "where a third-party claim *may* give rise to a potential indemnification or contribution claim against the estate, the third party claim will have a conceivable effect on the estate." Notice of Removal ¶ 30 (*citing In re Sun Edison, Inc.*, 576 B.R. 453, 462-63 (Bankr. S.D.N.Y.)). But McKinsey fails to explain how Debtor will incur liability subject to the indemnity provisions given the bankruptcy stay and that plaintiffs across the country are proceeding only against the non-debtor defendants in state court. *See* 11 USC § 362(a)(1)(6). *Parry v. Mohawk Motors of Mich, Inc.*, 236 F.3d 299, 314 (6th Cir. 2000), *cert. denied* 533 U.S. 951 ("[A]bsent unusual circumstances the stay does not extend to separate legal entities such as corporate affiliates, partners in debtor partnerships, or to codefendants in pending litigation." (internal quotes omitted)); *Sav-A-Trip, Inc. v. Belfort*, 164 F.3d 1137, 1139 (8th Cir. 1999); *Lockett v. Owens-Corning Fiberglas*, 808 S.W.2d 902, 905 (Mo. App. E.D. 1991). Further, as set forth above, the Debtor's right to indemnity is remote and conditional.

### 3. McKinsey's authorities in support in jurisdiction arising out of an indemnification or contribution clause are inapposite.

The *Sun Edison* matter cited by McKinsey in favor of its argument that contractual indemnity provisions with Purdue support "related-to" jurisdiction concerned a release of non-

debtors contained within a Joint Plan of Reorganization previously confirmed by the bankruptcy court. *In re Sun Edison,* 576 B.R. at 455. There, the court held that "the Debtors have *failed to demonstrate… that the Court has jurisdiction* to release the Non-Voting Releasors' third party claims to the extent set forth in the release." *Id.*

Notwithstanding the lack of objections to the proposed release by creditors, "the Court expressed concern regarding its authority to bind non-voting creditors (who were entitled to vote) to the Release," which included a release of the Debtors' "Professionals" including "consultants." *Id.* at 456-57. Despite no party ultimately objecting to the Release, the Court nonetheless exercised its "independent obligation to consider whether it had subject matter jurisdiction to approve it." *Id.* at 457. The Court concluded that it did not: "In short, the Debtors have failed to sustain their burden of proving that the Court has subject matter jurisdiction to approve the Release in its current form."

Significantly, the precise contours of the proposed release in *Sun Edison*, and how that release interacted with potentially relevant indemnification and contribution rights, was a significant point of inquiry for the Court. Even though, as McKinsey cites, the *Sun Edison* court observed that "where a third party claim may give rise to a potential indemnification or contribution claim against the estate, the third party claim will have a conceivable effect on the estate," the court went on to state that "the Release [at issue in the *Sun Edison* proceeding] is much broader than the indemnification obligations the Debtors contend support it. For example, the indemnification obligations… relate only to post-petition acts, but the Release enjoins third party claims relating in any manner or way to the Debtors…" *See* Notice of Removal ¶ 30; *In re Sun Edison*, 576 B.R. at 463. Accordingly, the *Sun Edison* court declined to exercise jurisdiction to approve the release as it was written, concluding that "the reference to certain indemnity

obligations owed to a few parties does not prove that the outcome of the universe of claims the Debtors seek to enjoin will have a conceivable effect on the estate." *In re Sun Edison*, 576 B.R. at 463.

Given that McKinsey has provided no details whatsoever regarding the contours of its indemnity rights vis-à-vis Purdue, the same result should obtain here. *See also Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, 285 B.R. 519, 527 (Bankr. M.D. AL 2002)(denying to exercise "related to" jurisdiction based on an indemnification provision were "the language of the indemnity agreement is far from certain in establishing when and if indemnification accrues to an indemnified party."). The current Chapter 11 Joint Plan submitted by Purdue on March 15, 2021 provides, "any… contract or other obligation applicable to any Debtor shall be void and of no further force or effect to the extent such contract or other obligation creates an obligation of any Debtor… for the indemnification or reimbursement of any Person for costs, losses, damages, fees, expenses, or any other amounts whatsoever relating to or arising from any actual or potential litigation or dispute... based on or relating to… Opioid Related Activities or otherwise relating to opioids." *See* Section 8.4 of Purdue's Joint Chapter 11 Plan of Reorganization, Doc. 2487, *In re Purdue Pharma L.P.,* Case No. 19-23469 (Bankr. S.D.N.Y March 15, 2021). Given this language nullifying any of Purdue's indemnification obligations to third parties, McKinsey's purported rights of indemnification vis-à-vis the Purdue estate are quite *uncertain* at the present moment, and becoming more infirm by the day. It is an insufficient basis for federal jurisdiction over the County's claims.

*In re WorldCom, Inc. Securities Litigation*, another case cited by McKinsey, is likewise inapposite to the analysis of whether the McKinsey's purported indemnification and contribution claims may give rise to 'related-to" jurisdiction in this litigation. There, the indemnification rights

relied upon by the defendants as a basis of removal were found in the debtor's own by-laws, as opposed to a contract with a third party. *In re WorldCom*, 293 B.R. at 320.  Here, McKinsey argues that "Purdue has contractually agreed to indemnify McKinsey for all claims brought by third parties against Purdue or McKinsey (including reasonable legal fees) arising out of services to Purdue." Notice at Para. 37. But no details of the indemnification provisions beyond McKinsey's own description is provided, and the precise contours of any contractual obligations between Purdue and McKinsey should be known before relying on them as grounds for asserting federal jurisdiction over the County's state law claims. *See Linardos v. Fortuna*, 157 F.3d 945, 947 (2nd Cir. 1998)("It is also hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction.").

A separate WorldCom lawsuit is instructive, and directly analogous to the facts of the instant lawsuit. In *Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, the court declined to exercise "related to" jurisdiction over a state court lawsuit brought by an investor suing "a number of entities and persons allegedly, and/or with culpable knowledge of, the events and transactions leading to WorldCom's bankruptcy." 285 B.R. 519, 521 (Bankr. M.D. Al. 2002). Just like the County's claims against McKinsey, the plaintiff in *Retirement Systems of Alabama* alleged that defendants aided and abetted the debtor (WorldCom) in wrongful acts that contributed to WorldCom's collapse. *Id*. at 521-22.

 Finally, the contribution and indemnification concerns present in *In re Purdue Pharma* – a case heavily relied upon by Defendant – are absent here. There, Purdue was a named co-defendant in the enjoined action, and the statutory cause of action that was enjoined were claims under the Tennessee Drug Dealer Liability Act, which provides a *statutory* contribution claim

where "any person subject to liability under the TDDLA has a right of action against another person subject to liability under this chapter." *In re Purdue Pharma,* 619 B.R. at 52.

### ii.   McKinsey's claim that the County's claims are "highly interconnected with the conduct and actions of Purdue" does not support jurisdiction.

McKinsey's arguments in favor of "related-to" removal have recently been addressed – and dismissed – in this District. In *In re: Imerys Talc American, Inc.*, 2019 WL 2575048 (Bk. W.D. OK June 21, 2019), plaintiffs brought personal injury claims against Johnson & Johnson, alleging injury stemming from talc products, as well as Imerys, a supplier of talc to Johnson & Johnson. Upon Imerys declaring bankruptcy, Johnson & Johnson sought removal of state court actions on the basis that the talc claims were "related to" Imerys' bankruptcy.

There, *despite the Debtor being a named Defendant* in the state court litigation (which is not the case here – Madison County has filed its action solely against McKinsey), the *Imerys* court nonetheless declined to exercise federal "related-to" jurisdiction and remanded the proceedings to state court. The Court emphasized that the defendant seeking removal based on "related-to" jurisdiction had not filed its own proof of claim in the relevant bankruptcy proceeding. "For jurisdiction, 'there must be something to evidence the impact, like a proof of claim.'" 2019 WL at *4 (quoting *Salem Mills, Inc. v. Wisconsin Tool and Stamping Co.*, 148 B.R. 505, 509 Bankr. N.D. Ill. 1992).

McKinsey cites *In re Gardner* in support of the proposition that a civil proceeding is "related to" a bankruptcy proceeding where "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Notice of Removal ¶ 28. *Gardner*, however counsels in favor of declining jurisdiction over this litigation. The *Gardner* case "involve[d] the conflict between two creditors over property [not] property of the bankruptcy estate." *In re Gardner*. 913 F.2d 1515, 1518 (10th Cir. 1990). Because the dispute concerned

property *outside* of the bankruptcy estate, the *Gardner* court remanded the proceedings to state court. *Id*. The same result should obtain here, where Purdue is not a named defendant and the assets that would be used to satisfy any judgment in favor of the County are held by *McKinsey*, and are not a part of the Purdue bankruptcy estate.

Similarly, just as the trustee in the *Gardner* matter had not claimed an interest in defendant's property, the trustee in the Purdue bankruptcy has not claimed any interest in property held by McKinsey. *See Id.* at 1519 (citing *In re Federal Shopping Way,* 717 F.2d 1264, 1272 (9th Cir. 1983)(no bankruptcy jurisdiction where dispute concerned non-estate property and the bankruptcy trustee claimed no interest in the property)). For those reasons, the *Gardner* court declined to exercise jurisdiction over the state law claims, because "to hold otherwise would lead to almost unlimited jurisdiction by the bankruptcy court." *Gardner*, 913 F.3d at 1519 (citing *In re Dickinson Lines, Inc.* 47 B.R. 653, 656 (Bankr. D. Minn. 1985).

McKinsey also relies on a recent decision in the ongoing bankruptcy of Purdue Pharma enjoining claims against Richard Sackler for the proposition that the instant action would have a "conceivable effect" on the Purdue bankruptcy. *In* re *Purdue Pharma* concerned state law claims brought against Richard Sackler, Purdue's former president and co-chairman (and, through various intermediary entities, a beneficial owner of the debtor Purdue. 619 B.R. at 42. Richard Sackler was defined as a "Related Party" in the Purdue bankruptcy. There, the district court affirmed the ruling of the bankruptcy judge enjoining state law claims against Richard Sackler for these unique and specific reasons given his ownership of and role at Purdue.

The *Purdue Pharma* decision is readily distinguishable from the instant claims against McKinsey. Unlike Richard Sackler, McKinsey is neither a debtor nor a "Related Party" in the

Purdue bankruptcy.[1] For instance, one of the "conceivable effects" of pursuing litigation against Richard Sackler individually during the ongoing Purdue bankruptcy proceedings was that the plaintiffs "could not try a case against the Related Parties [such as Richard Sackler] *without involving Purdue in discovery and related matters, which would impose costs on the Debtors estate*." *Id*. at 45 (emphasis added). This concern does not exist in the present action.

Second, the *Purdue Pharma* court noted that claims against Related Parties may have collateral estoppel effects on cases against the debtors. *Id*. at 45. Because of the concerns that claims against Dr. Sackler might hinder "the likelihood of a successful reorganization" by "adding new creditors to the priority order of claims to the *res*,'' the court held that the injunction barring the pursuit of claims against Related Parties was appropriate. *Id*. at 45. *None* of those concerns exist here, where the Purdue debtors have already submitted their plan, and no new creditors arise out of the County's action. *See* Notice of Removal ¶¶ 31-31 (arguing the County is already a creditor in the Purdue bankruptcy).

Furthermore, the *Purdue Pharma* court noted that the "the balance of hardships and public interest factors" favored an injunction inclusive of claims against "Related parties" because "the broad injunction was necessary to preserve any reasonable prospect of success for a future reorganization plan." 619 B.R. at 45-46 (internal citations omitted). The reason the broad injunction was necessary was because "the [then-proposed] Settlement Structure *depended on the*

---

[1] The defined list of "Related Parties" in the Purdue bankruptcy is extensive. It includes *96* separate partnerships, limited liability companies, corporations, trusts, and individuals related to the Purdue bankruptcy as of March 1, 2021.

By that date, McKinsey had been named in multiple lawsuits nationwide regarding its conduct in the opioid crisis. Nevertheless, neither McKinsey, nor any individuals working for McKinsey, are identified as a "Related Party" in the Purdue bankruptcy proceedings. *See* Doc. 224, fn. 2*, In re Purdue Pharm L.P.,* Case No. 10-08280-rdd (Bankr. S.D.N.Y. March 3, 2021).

*sale of Purdue's overseas affiliates (the IACs), which were not owned by the Debtors, but the Sackler family.*" *Id*. at 46. Because continued litigation against *Related Parties*, such as Richard Sackler, "might reach the assets invested in the IACs, and threaten the funding stream of the [then-proposed] Settlement Structure." *Id.* at 46.

These concerns are simply absent with respect to the instant litigation against McKinsey. McKinsey is neither a "Related Party," norm, crucially, *an owner of assets intended to be contributed to the Purdue bankruptcy estate as a condition of the reorganizaton*. Accordingly, McKinsey does not argue – nor can it – that claims against it may impact the funding stream of the *res* because such claims *do not implicate an ownership interest in assets intended to fund Purdue's reorganization plan*. McKinsey is not alleged to have an ownership interest in any IAC, and any judgment obtained against McKinsey would not have any effect on the ownership of the IACs or the funding of the Purdue bankruptcy reorganization plan.

Nor does *In re WorldCom* support the exercise of jurisdiction over the County's claims. That case concerned the bankruptcy of WorldCom, a public company whose shareholders sued the company's accountant in state court alleging state *and* federal securities law violations. 293 B.R. at 311. An MDL had already been established to consolidate multiple class action complaints alleging substantially similar claims *against the same defendants* as were at issue in the *WorldCom* case. *See* 293 B.R. at 313. The *WorldCom* court, then, only considered whether an individual – as opposed to a class-action – lawsuit filed in state court was amenable to federal jurisdiction where the same claims were already "moving forward" in federal court. *Id*. AT 313-314. There are no comparable claims *already* moving forward in this the case of McKinsey. In fact, the County's complaint was the first in the country to allege wrongdoing by McKinsey related to the opioid crisis.

### c. Mandatory abstention requires the Court to remand this action.

Even if this Court determines that "related to" subject matter jurisdiction obtains in this case, this Court must abstain from exercising "related-to" jurisdiction under Section 1334(c). The plain terms of the statute require mandatory abstention where, as here, the action was "commenced" in a state forum of appropriate jurisdiction. *In re Migard Corp.*, 204 B.R. 764, 774 (10TH Cir. 1997).

Mandatory abstention derives from 28 U.S.C. § 1334(c)(2). A court must abstain and remand a case premised on "related-to" jurisdiction if: (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the bankruptcy code; (4) federal courts would not have jurisdiction absent its relation to the bankruptcy case; (5) an action is commenced in state court; and (6) the action can be timely adjudicated in the state forum. *Id.* Mandatory abstention does not apply to "core" bankruptcy proceedings. 28 U.S.C. § 157(b)(1); *see also In re 4 Front Petroleum, Inc.*, 345 B.R. 744, 754-55 (Bankr. N.D. OK 2006)(declining to exercise jurisdiction over state law claims brought by a bankruptcy trustee asserted against a consultant alleged to have aided and abetted violations of fiduciary duties owed to the debtor).

Initially, this action is not a "core" proceeding, as it not directly related to a bankruptcy court's central function. *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005); *see In re S&M Constructors, Inc.*, 144 B.R. 855, 860 (Bankr. W.D. Mo. 1992) (explaining core proceedings). Core proceedings encompass claims predicated on a right created by Title 11 as well as claims that have no existence outside of bankruptcy. *S&M Constructors*, 144 B.R. at 860; *Shiboleth v. Yerushalmi*, 412 B.R. 113, 116-17 (S.D.N.Y. 2009). Non-core proceedings, by

contrast, involve the adjudication of state-created private rights where the outcome of such proceedings could affect the bankruptcy estate. *Shiboleth*, 412 B.R. at 116.

Section 157(b) sets forth a non-exclusive list of core proceedings in bankruptcy. 28 U.S.C. § 157(b). Section 157(b)(2)(O) specifically excepts personal injury claims from core proceedings, stating that core proceedings include "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, *except personal injury tort or wrongful death claims.*" 28 U.S.C. § 157(b)(2)(O). "[L]iquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11" are also excluded from the definition of core proceedings. *See* 28 U.S.C. § 157(b)(2)(B). Further, numerous courts have held that personal injury claims underlying a state cause of action are not core issues under § 157. *See, e.g.*, *Lichtenfels v. Electro-Motive Diesel, Inc.*, No. CIV. A. 09-1590, 2010 WL 653859, at *7 (W.D. Pa. Feb. 22, 2010) (finding asbestos exposure proceeding was non-core "because the proceeding [wa]s a personal injury tort, and its only putative relation to the GM bankruptcy [wa]s its possible effect upon the bankruptcy's administration"); *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 783 (E.D. Tex. 2001) ("The causes of action pursued in the underlying [asbestos personal injury] case are state law claims of personal injury through fraud, negligence, and other allegations sounding in tort. As such, they are not core issues as defined in 28 U.S.C. § 157."); *Wingate v. Insight Health Corp.*, No. 7:13CV00142, 2013 WL 1951897, at *5 (W.D. Va. May 10, 2013); *Nase v. TECO Energy, Inc.*, No. 09-7659, 2010 WL 924290, at *3 (E.D. La., March 9, 2010).

Here, the state court action consists of state law claims against a non-debtor that do not arise in or under the bankruptcy code. Further, Debtor will not be a liable defendant in this action, which precludes it from having a direct impact on the bankruptcy proceeding. *Mt McKinley,* 399

F.3rd at 448-49. Thus, this case is a non-core proceeding and subject to mandatory abstention under Section 1334(c)(2).

In addition to being a non-core proceeding, this proceeding satisfies the requirements of Section 1334(c)(2). First, the County's motion to abstain was timely. McKinsey removed this case on March 4, 2021, and the County promptly filed this Motion for Remand and Abstention.

Second, the County asserts solely state law claims in its complaint. No federal causes of action are alleged.

Third, the action does not "arise in" a bankruptcy case or "arise under" the bankruptcy code. Instead, this an action by a governmental unit enforcing its police or regulatory powers filed in state court against a defendant who is neither a debtor nor a "Related Party" in the Purdue bankruptcy.

Fourth, Section 1334 provides the sole basis for federal jurisdiction. McKinsey's alternative theories of federal jurisdiction have already been addressed *supra*.

Fifth, this action was commenced in state court on January 29, 2021 in Madison County, Illinois. Section 1334(c)(2) requires that the proceeding was "commenced in a State forum of appropriate jurisdiction," as was done here.

Sixth, this action can be timely adjudicated. Whether a matter can be "timely adjudicated" is a question of both law and fact. *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580–82 (2d Cir. 2011). In determining timeliness, the district court must consider: (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate. *Id.* at 580.

Since this case satisfies all the mandatory abstention requirements, the Court should expeditiously remand it to Illinois state court from where it was removed.

### d. Alternatively, this Court should permissively abstain from the case.

The permissive abstention doctrine is derived from 28 U.S.C. § 1334(c)(1), which states:

Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). In determining whether to abstain under § 1334(c)(1), courts typically consider the following non-exclusive factors:

1. The extent to which the issues involve difficult or unsettled issues of state law.
2. The extent to which state law or other esoteric and technical issues predominate.
3. The effect of abstention on the efficient administration of the bankruptcy proceedings.
4. The presence of a commenced state law action in which the matter may be determined.
5. The degree of relatedness to the main bankruptcy proceeding.
6. The burden on the bankruptcy court's docket.
7. The likelihood that one of the parties is forum shopping.
8. The presence or necessity in the proceeding of non-debtor parties.
9. The existence of a jurisdictional basis other than 28 U.S.C. § 1334.
10. The existence of a right to a jury trial and whether the parties do or do not consent to jury trial in the bankruptcy court.
11. The financial condition of the parties.
12. The case's status as a "related" matter rather than a core proceeding.

*In re Phelph Technologies, Inc.*, 238 B.R. 819, 823 (Bankr. W.D. Mo. 1999).

Here, the totality of factors *overwhelmingly* weighs in favor of abstention. As stated above, McKinsey is seeking to have this case transferred to a new multi-district litigation, *not* an ongoing bankruptcy proceeding. With this in mind, factor 6 (the burden on the bankruptcy court's docket) is a non-sequitor: McKinsey does not purport to transfer this case to the bankruptcy court's docket. Factors eight, and eleven are neutral. And factors one, two, three, four, five, seven, nine, ten and twelve favor abstention.  *See Klohr v. Martin & Bayley, Inc.*, 2006 WL 1207141, *4-6 (S.D. IL 2006)(remanding state court litigation on grounds of permissive abstention and equitable remand

where "a majority of relevant factors favors permissive abstention and equitable remand," including "state-law issues predominate over bankruptcy issues;" "no basis for federal jurisdiction apart from bankruptcy and involves no core proceedings;" "considerations of comity;" and "principles of fairness require that the plaintiffs be allowed to litigate this lawsuit in their forum of choice.").

> ### e.   Equitable remand is appropriate under 28 U.S.C. 1452(b).

Alternatively, the court should exercise its equitable authority under Section 1452(b) to remand the County's claims to state court. That statute provides that "the Court to which such a claim or cause of action is removed may remand such claim or cause of action on any equitable ground." Relevant factors in determining whether a court should exercise its equitable discretion to remand include: (1) The effect on the efficient administration of the bankruptcy estate; (2) the predominance of state law issues; (3) the difficulty of applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of a right to jury trial; and (7) prejudice to the involuntarily removed parties. *In re Atlas Computers, Inc.*, 2010 WL 1490051, *5 (N.D. OK April 13, 2021)(citing *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991).

McKinsey's arguments in favor of "related-to" removal have recently been addressed – and dismissed – under substantially similar factual circumstances. In *In re: Imerys Talc American, Inc.*, 2019 WL 2575048 (Bk. W.D. OK June 21, 2019), plaintiffs brought personal injury claims against Johnson & Johnson, alleging injury stemming from talc products, as well as Imerys, a supplier of talc to Johnson & Johnson. Upon Imerys declaring bankruptcy, Johnson & Johnson sought removal of state court actions on the basis that the talc claims were "related to" Imerys' bankruptcy.

There, *despite the Debtor being a named Defendant* in the state court litigation (which is not the case here – Madison County has filed its action solely against McKinsey), the *Imerys* court nonetheless declined to exercise federal "related-to" jurisdiction and remanded the proceedings to state court. The Court emphasized that the defendant seeking removal based on "related-to" jurisdiction had not filed its own proof of claim in the relevant bankruptcy proceeding. "For jurisdiction, 'there must be something to evidence the impact, like a proof of claim.'" 2019 WL at *4 (quoting *Salem Mills, Inc. v. Wisconsin Tool and Stamping Co.*, 148 B.R. 505, 509 Bankr. N.D. Ill. 1992).

WHEREFORE, for all of the foregoing reasons and, Plaintiff respectfully prays that this Court grant its Motion to Remand and enter an Order remanding this case to the Circuit Court for Madison County, Illinois for further proceedings.

DATED: March 19, 2021                                   Respectfully submitted,

                                                        /s/ Ann E. Callis
                                                        Ann E. Callis - #6203933
                                                        Eric D. Holland - #6207110
                                                        R. Seth Crompton - #6288095
                                                        Robert J. Evola - #6242860
                                                        HOLLAND LAW FIRM
                                                        211 N. Broadway, Suite 2625
                                                        St. Louis, MO 63102
                                                        Telephone: 314-241-8111
                                                        Facsimile: 314-241-5554
                                                        Email: acallis@hollandtriallawyers.com
                                                        E-mail: eholland@hollandtriallawyers.com
                                                        E-mail: scrompton@holandtriallawyers.com
                                                        E-Mail: revola@hollandtriallawyers.com

                                                        Matthew Browne*
                                                        BROWNE PELICAN PLLC
                                                        7007 Shook Ave.
                                                        Dallas, Texas 75214
                                                        Phone: 405-642-9588
                                                        mbrowne@brownepelican.com
                                                        * pending admission *pro hac vice*

Matthew J. Sill
Fulmer Sill, PLLC
1101 N. Broadway Ave., Suite 102
Oklahoma City, OK 73103
Telephone: 405-509-6300
Facsimile: 800-978-1345
Email: msill@fulmersill.com
* pending admission *pro hac vice*

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically filed and served electronically via the Court's ECF system on all parties receiving ECF notices on this 19th day of March 2021.

HOLLAND LAW FIRM, LLC

/s/ Ann E. Callis
Ann E. Callis - #6203933
Eric D. Holland - #6207110
R. Seth Crompton - #6288095
Robert J. Evola - #6242860
HOLLAND LAW FIRM
211 N. Broadway, Suite 2625
St. Louis, MO 63102
Telephone: 314-241-8111
Facsimile: 314-241-5554
Email: acallis@hollandtriallawyers.com

*Attorneys for Plaintiff*